IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Joseph Barton Benson, #301702 ) | |
| ) | Civil Action No. 8:09-41-GRA-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Deputy S.T. DeLoach; ) | |
| Deputy NFN Warchol; and ) | |
| Southern Health Partners; ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the Defendant Southern Health Partners' Motion for Summary Judgment (Dkt. # 17), the Defendants Deputies S.T. DeLoach and NFN Warchol's Motion for Summary Judgment (Dkt. # 31), and the Plaintiff's Motions for Summary Judgment (Dkt. # 43) and Injunctive Relief (Dkt. # 44).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action on January 9, 2009, seeking damages for alleged civil rights violations. On March 2, 2009, the Defendant Southern Health Partner filed a motion for summary judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.

1975), on March 4, 2009, the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 22, 2009, the Plaintiff filed a response opposing the Defendant Southern Health Partners' Summary Judgment Motion. On June 16, 2009, the Defendants DeLoach and Warchol filed a separate motion for summary judgment. On June 18, 2009, the Plaintiff was again advised of the summary dismissal procedure pursuant to *Roseboro.* On August 13, 2009, the Plaintiff filed a response opposing the Defendants DeLoach and Warchol's Summary Judgment Motion. On that same date, the Plaintiff also filed his own motions for summary judgment and injunctive relief.

## I. **FACTS PRESENTED**

The Plaintiff is a pro se prisoner who is currently incarcerated at the Allendale Correctional Institution. The Plaintiff's claims of excessive force stem from his arrest on September 24, 2008. In his complaint, the Plaintiff alleges that on September 24, 2008, at 7:00 a.m., he was awakened at his home by the Defendant DeLoach and ordered to show his hands. (Compl. & Attach.) He states that he was cooperative and raised his hands, but that during the incident, he was tased four times. He also alleges that the officers kicked and beat him until an ambulance arrived at 7:25. *Id.* Further, he states that the handcuffs were placed too tightly on his wrists and he still has scars months later from the handcuffs. *Id.* He states that he was taken to the Aiken Regional Medical Center and then to the Aiken County Detention Center ("ACDC"), and at both places, he requested that

2

pictures be taken to document his injuries, but his requests were refused. (Compl. Attach. 3.)

The Plaintiff states that at the hospital, he received three or four stitches for a cut on the left side of his head. *Id.* The Plaintiff states that since the incident, his "head hurts 75% of the time and he has slight convulsive behavior periodically." (Compl. at 4.) He also states that he has contracted a staph infection in one of the taser wounds because of an unsanitary taser. *Id.*

The Plaintiff also alleges there is "poor and inadequate medical qualifications and staff" at the ACDC. (Compl. at 3.) He states that the head medical director at ACDC had her license revoked for insubordination and should not be working. *Id.* He alleges he has been denied medical care numerous times. *Id.* The Plaintiff is seeking the termination of the Defendants DeLoach and Warchol and the medical staff at ACDC, and actual and punitive damages. (Compl. at 5.)

## II. APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to

summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## III. DISCUSSION

In his complaint, the Plaintiff alleges claims of deliberate indifference to a serious medical need and excessive force. The Defendants have moved for summary judgment contending, inter alia, that the Plaintiff has failed to state a claim.[1] The undersigned agrees.

**Deliberate Indifference to Medical Needs**

The Plaintiff alleges that the Defendants failed to provide him with medical treatment. In his complaint, the Plaintiff specifically alleges there is "poor and inadequate medical qualifications and staff" at the ACDC. (Compl. at 3.) He alleges he has been denied medical care numerous times. *Id.* Further, he states that the head medical director at the ACDC had her license revoked for insubordination and should not be working. *Id.*

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials

---

[1] As noted, the Plaintiff has also filed a motion for summary judgment. (Dkt. # 43.) In his motion, the Plaintiff merely states he has filed this action alleging excessive force and he requests the Court grant him summary judgment. (Dkt. # 42 - Pl.'s Mem. Supp. Summ. J. Mot.) Based on the Plaintiff's failure to set forth any argument in support of his summary judgment motion, and because the undersigned recommends the defendants be granted summary judgment, the Plaintiff's summary judgment motion should be denied.

have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Thus, in order to proceed with this claim under § 1983 for denial of medical care, the Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. *Estelle,* 429 U.S. 97 at 106. Here, the Plaintiff has presented no evidence to show that any named Defendant was deliberately indifferent to any serious medical need. The Plaintiff only

makes general allegations in his complaint. Reviewing the Plaintiff's medical records, the undersigned concludes that the Plaintiff was not deliberately denied care for any serious medical needs while he was incarcerated at the ACDC. (See Def. Health South Partners' Mem. Supp. Summ. J. Mot. Ex. A - Pl.'s Med. Records.) The records show that the Plaintiff was continuously treated for various conditions while at the ACDC. Furthermore, the undersigned notes that the Plaintiff, himself, in what appears to be answers to the Defendants' Requests for Admissions, states, "I admit that my complaint is not that I did not receive medical attention but the manner in which I was arrested." (Pl.'s Mem. Opp. Summ. J. Mot. Attach. # 2.) He also states that "I admit that medical staff provided medication and sometimes treatment for the injuries." *Id*. Accordingly, the Defendant Southern Health Partners should be granted summary judgment.[2]

**Excessive Force**

The Plaintiff alleges the arresting officers, the Defendants Deloach and Warchol, used excessive force while arresting him. The Defendants DeLoach and Warchol contend that the Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and fail on the merits, and they are entitled to qualified immunity.

First, the undersigned considers whether the Plaintiff's excessive force claims are barred by *Heck.* To the extent that an excessive force claim represents a collateral attack

---

[2]Alternatively, the undersigned recommends the Defendant Southern Health Partners be granted summary judgment because, Southern Health Partners itself, is not an entity that is subject to suit under § 1983. *See Werts v. County of Richland,* 2007 WL 914039 (unpublished)(D.S.C. 2007).

on the Plaintiff's criminal convictions, it is barred by *Heck*. *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir.2005) ("[S]uccess on [Plaintiff's] excessive force claim would necessarily imply the invalidity of his state assault conviction. The struggle between [Plaintiff] and the officers gave rise to both [Plaintiff's] assault conviction and the excessive force claim, and the two are inextricably intertwined."); *Hudson v. Hughes,* 98 F.3d 868, 872-73 (5th Cir.1996); *Woods v. Cashier,* 2006 WL 2385275, *8 (D.S.C. Aug. 17, 2006).

If, however, there is no legal nexus between the officer's alleged force and the plaintiff's resistance; that is, the alleged excessive force occurred, independently, either before the plaintiff resisted arrest, or after his resistance had clearly ceased, then a successful § 1983 suit for excessive force would not imply invalidity of the conviction. *See Smith v. City of Hemet,* 394 F.3d 689, 697-99 (9th Cir. 2005)("[A] § 1983 action is not barred by *Heck* unless the alleged excessive force occurred at the time the offense [of resisting arrest] was being committed. . . . [If the officers'] alleged acts of excessive force . . . occurred before or after the [plaintiff] committed the acts to which he pled, [they] would not invalidate his conviction [for resisting arrest].") (citation omitted). Therefore, it is necessary to examine the Plaintiff's excessive force claims carefully and determine whether these claims arose before or after the Plaintiff's acts which constituted his resisting arrest charge to which he pled guilty.

In his complaint, the Plaintiff alleges that at 7:00a.m. on the day of his arrest, he was awakened by the Defendant Deloach ordering him to show his hands. (Compl. at 3.) He states that the officers said he did not show his hands, but he alleges that before he was

8

tased, Officer Warchol commented that the Plaintiff was a fighter based upon the Plaintiff's tattoo of boxing gloves on his forearms. *Id.* The Plaintiff states, "How can I hide my hand but yet my forearms are visible!" *Id.* The Plaintiff then alleges that the officers stated that they were going to beat him until the ambulance arrived. *Id.* Finally, he alleges the handcuffs were too tight. *Id.*

In a statement attached to his complaint, the Plaintiff elaborates on his allegations. He states that the officers awakened him and his girlfriend at 7:00 a.m. by saying that they had a warrant for the Plaintiff's arrest. He states he fell "back asleep for some minutes" and then he put his hands up as he was told. He notes that his girlfriend told him not to resist. He states that while he had his hands raised, one of the officers commented on his tattoo. He states that one of the deputies jumped over his girlfriend to get to the Plaintiff and kicked him in his bottom lip. He states that he still had his hands up and he was lying under the blanket without any clothes on. He states one of the deputies placed one handcuff on one the Plaintiff's wrists and the Plaintiff complained about it being too tight. He states he still had his hands in the air. He states one woman deputy said that if the Plaintiff resisted again, the officers should tase him and then shot him with a taser. He states he was tased a second time and he sat down on the bed and lit a cigarette and smoked about five times when one of the officers smacked the cigarette out his hand and stomped on it on the carpet. The Plaintiff states he told the officer that he would have put the cigarette out in an ashtray and that is when he was shot with a taser for the third time. He states that he started removing the tasers with his hand which had the handcuffs

9

attached to it and he was shot with a taser a fourth time. He states he pulled the taser out and then he was down on the carpet with his hands on his neck trying to protect himself. He alleges he was tased again and again and one of the deputies said he was going to beat the Plaintiff until an ambulance arrived which he states they did. He alleges he was kicked and beaten until 7:25 a.m. He then states that he got up from the floor and the officers asked him if he had any weapons in the house and he states he told them no.

The Plaintiff also filed another statement, which is substantially similar to the above statement. (Dkt. # 26.) However, the Plaintiff added that the officers told him not to move and put his hands up. He states that when he had his hands up, he tried to give DeLoach his hand, but DeLoach jumped across the bed and kicked him in his mouth. He also states that after he complained of the handcuffs being too tight he told the officers, "You all is going down." He also states he sat down on the bed and smoked a cigarette ("4 maybe 6 puffs") immediately after being tased the first time.

In support of their summary judgment motion, the Defendants Deloach and Warchol have submitted records pertaining to the Plaintiff's arrest, charge, and the Plaintiff's guilty plea for resisting arrest arising from this incident. (Dkt. # 31- Defs.' Summ. J. Mot. Exs.) The Plaintiff' medical records have also been filed in this case. (Dkt. # 17- Def. Southern Health Partner's Summ. J. Mot. Dkt. # 17 Ex. 4.)

The Defendants DeLoach and Warchol have also submitted affidavits describing the incident. In his affidavit, the Defendant DeLoach states that the Plaintiff refused to show his hands or come from under the covers even after he was told he was under arrest. (Dkt.

# 31- Defs.' Summ. J. Mot. Ex. 3 - DeLoach Aff. ¶ 2.) DeLoach states that he kicked the covers off of the bed and Plaintiff pulled his hands into his torso refusing to comply. *Id.* DeLoach states that as he reached for the Plaintiff, the Plaintiff grabbed at him and DeLoach tased him. *Id.* DeLoach states that the Plaintiff then slid out of bed and he was again ordered to show his hands. *Id.* He states that the Plaintiff attempted to pull the taser prong out and because the Plaintiff continued to resist, he tased the Plaintiff a second time. *Id.* DeLoach states that as the officers attempted to handcuff the Plaintiff, the Plaintiff aggressively resisted by swinging and kicking at the officers. (Dkt. # 31- Defs.' Summ. J. Mot. - Ex. 3 - DeLoach Aff. ¶ 2.) DeLoach states that the officers struggled with the Plaintiff for a couple of minutes and the Plaintiff at one point attempted to pull Warchol's gun from his tactical vest. *Id.* DeLoach states that he and Sgt. Hyler attempted to drive stun the Plaintiff to gain control, prevent the Plaintiff from grabbing the gun, and to place handcuffs on him. *Id.* DeLoach states the officers were finally able to handcuff the Plaintiff and he was then taken to Aiken Regional Medical Center for evaluation. *Id.*

In his affidavit, the Defendant Warchol attests that on the morning of the Plaintiff's arrest, Warchol remained outside as other officers went inside to arrest the Plaintiff. (Dkt. # 31- Defs.' Summ. J. Mot. Ex. 4 - Warchol Aff. ¶ 3.) He states that when he heard that the Plaintiff was fighting, he went inside to assist. *Id.* He avers that the Plaintiff was resisting arrest and that as he attempted to subdue him, the Plaintiff attempted to grab Warchol's gun from his tactical vest. *Id.* He states the Plaintiff was tased at some point and after struggling with the Plaintiff a few minutes, the officers were able to place handcuffs on him

11

the Plaintiff and he was then taken to Aiken Regional Medical Center for evaluation. *Id.*

As noted above, the Plaintiff himself states that after the officers told him not to move, he tried to give DeLoach his hand. He also states that after he complained of the handcuffs being too tight he told the officers, "You all is going down." Further, he states he sat down on the bed and smoked a cigarette ("4 maybe 6 puffs") immediately after being tased the first time. Clearly, there is a legal nexus between the allegations of excessive force and the Plaintiff's conduct giving rise to his resisting arrest conviction. Therefore, the Plaintiff's excessive force claim is barred by *Heck. See Woods v. Cashier,* 2006 WL 2385275, at *7-9 (D.S.C. Aug. 17, 2006).

Even if the Plaintiff's excessive force claim is not barred by *Heck*, the undersigned concludes that it is still subject to dismissal on the merits. As noted above, this excessive force claim is analyzed under the Fourth Amendment, which governs claims of excessive force during the course of an arrest of a person. *Graham v. Connor,* 490 U.S. 386, 395 (1989). Under the Fourth Amendment, claims of excessive use of force during an arrest are considered under an "objective reasonableness" standard. This test requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests alleged to justify the instruction." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). When considering a police officer's action under this "objective reasonableness" standard, the Court must consider the circumstances of the particular case, including the severity of the crime committed, whether the subject posed an immediate threat to the safety of the police officers or others, and whether the subject was actively resisting arrest or attempting

to evade arrest. *Graham,* 490 U.S. at 396. What is objectively reasonable depends on the conditions that exist at the time the alleged excessive force is used, recognizing that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id.* Furthermore, because "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving," the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided. *Id.* at 396-397.

The evidence shows that the actions taken by the Defendants were objectively reasonable. The evidence presented, including the Plaintiff's own allegations and statements as set out above, plainly shows that at the time of his arrest, he actively resisted being taken into custody and refused to cooperate. Further, it was not unreasonable for the Defendants to believe that the Plaintiff posed a threat of serious physical harm to them as he threatened the officers with his actions (sudden movements towards the officers after being told to freeze) and words ("You all is going down.").[3] Therefore, the Defendants' use of force while arresting plaintiff, including their decision to use a taser, was not unreasonable given the circumstances. *See Keller v. Hood,* 2008 U.S. Dist. LEXIS 17783, at * 15-16 (E.D.Va. Mar. 6, 2008) (finding an officer's use of a taser reasonable when the officer perceives the suspect to be a threat and the suspect is acting erratically or

---

[3] Additionally, the undersigned notes that the Plaintiff himself stated that his size (6'2" and 206 pounds) made people think he was violent. (Dkt. # 17 Def. Southern Health Partners' Summ. J. Mot. Ex. A Pl.'s Med. Records at 27; 30.)

violently).[4]  Specifically, courts have held that officers may use a taser in various situations to subdue a belligerent or uncooperative arrestee, inmate or detainee.  *See, e.g., Jasper v. Thalacker,* 999 F.2d 353, 354 (8th Cir.1993) (holding use of stun gun to subdue unruly inmate did not violate 8th Amendment where plaintiff failed to prove that officers used stun gun sadistically or maliciously to cause harm); *Caldwell v. Moore,* 968 F.2d 595, 599-602 (6th Cir.1992) (holding use of taser was not per se violation of 8th Amendment if use of the taser gun is necessary to avoid using greater force and use is not with malicious intent to inflict harm).[5]

The undersigned notes that the Plaintiff has also alleged that the officers beat and kicked him until the ambulance arrived.  Liberally construing the Plaintiff's allegations as a post-arrest claim of excessive force, this claim also fails.  Even assuming the Plaintiff's allegations are true and that the officers continued to kick and beat him after he was under control (i.e. after his arrest), the Plaintiff's claims still fail as he fails to establish that his injuries were more than de minimis. Post-arrest allegations are not analyzed under the Fourth Amendment. *Woods v. Cashier,* 2006 W L 2385275 n. 5 (D.S.C. 2006)(holding "[o]nce an arrest has been effected, any excessive force claims are analyzed under the

---

[4] The Plaintiff also alleges that he developed a staph infection at one of the taser burn sites because of an unsanitary taser.  However, there is no evidence in the record that an unsanitary taser caused him to develop a staph infection.

[5] Even assuming that excessive force was applied, the officers are entitled to qualified immunity both because it would not be clear to a reasonable officer that the actions taken to restrain the uncooperative Plaintiff were unlawful.

14

Fourteenth Amendment, which protects a pretrial detainee from the use of excessive force that amounts to punishment.") The Fourth Amendment governs only those claims of excessive force occurring at the time of arrest and claims of excessive force alleged to have occurred afterwards are governed by the Fourteenth Amendment standard applicable to pre-trial detainees. *Riley,* 115 F.3d 1159.

In *Riley,* the Fourth Circuit also rejected the "arresting officer" rule. 115 F.3d at 1159. Under the arresting officer rule, the Fourth Amendment standard applies to the entire period where the arrestee remains in the custody of the arresting officer. *See Powell v. Gardner,* 891 F.2d 1039, 1044 (2d Cir.1989) (holding "Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer"); *McDowell v. Rogers,* 863 F.2d 1302, 1306 (6th Cir.1988) (holding Fourth Amendment seizure "continues throughout the time the person remains in the custody of the arresting officers"); *Robins v. Harum,* 773 F.2d 1004, 1010 (9th Cir.1985) (holding "once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers").

Here, the Plaintiff's excessive force claims which he alleges occurred after his arrest should be analyzed under the Fourteenth Amendment. A Fourteenth Amendment claim of excessive force exists where the defendant "inflicted unnecessary and wanton pain and suffering" on an arrestee or pretrial detainee, and where the force was applied "maliciously and sadistically for the very purpose of causing harm." *Taylor v. McDuffie,* 155 F.3d 479,

15

483 (4th Cir.1998). However, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." *Norman v. Taylor,* 25 F.3d 1259, 1263 (4th Cir.1994) (*citing Hudson v. McMillian,* 503 U.S. 1 (1992)). Extraordinary circumstances are present when "the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than de minimis injury." *Id.* at 1263 n. 4 (internal citations and quotation marks omitted). The Defendants also argue the Plaintiff has failed to establish that his injuries were more than de minimis, and that the Plaintiff accordingly has failed to establish injury sufficient to satisfy a constitutional threshold. The court agrees.

It is undisputed that the Plaintiff was taken to the Aiken Regional Medical Center for immediate medical attention. The medical records reveal that after his arrest the Plaintiff was transported to the emergency room where he was treated and released. (Dkt. # 17-4 Pl.'s Med. Records at 31-35.) Although the Plaintiff complains of what he describes as a severe beating by the Defendants, he does not state that he sustained any injury from being allegedly kicked and beaten for almost a half an hour other than a cut on the left side of his head which required three or four stitches. (Compl. Attach.) The Plaintiff fails to describe any additional injuries he sustained besides the cut on his face which was documented in the medical records. At best, the Plaintiff suffered injuries which are categorized as de minimis. *See Taylor,* 155 F.3d at 484 (holding "temporary swelling and irritation is precisely the type of injury this Court considers de minimis."); *Stanley v. Hejirika,* 134 F.3d 629, 637-38 (4th Cir.1998) (holding "bruising of his right arm, left jaw, left and right wrists and

back, and a tooth which was loosened" constituted de minimis injury); *Cox v. Gaskins,* 2003 WL 23857306, at *2 (E.D.N.C. May 30, 2003) (unpublished) (finding that two lacerations to plaintiff's head and an injury to his nose were de minimis injuries). On these facts, no reasonable jury could conclude that the Plaintiff's injuries were more than de minimis. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (holding that summary judgment is appropriate "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party"). Accordingly, the Defendants DeLoach and Warchol should be granted summary judgment.

**State Law Claims**

To the extent that the plaintiff states additional claims under state law, (See Pl.'s Mem. Opp. Defs.' Summ. J. Mot. at 3), the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

**Plaintiff's Motion for Injunctive Relief**

On August 13, 2009, the Plaintiff filed a motion for injunctive relief. (Dkt. # 44.) In order to be granted a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, ___ U.S. U ___, 129 S.Ct. 365, 374 (2008). The Plaintiff does not set forth any factual allegations which would entitle him to an injunction. Nor does he not allege any irreparable harm if the injunction is denied.

17

The Plaintiff merely re-alleges in a conclusory fashion that the was subjected to excessive force when he was arrested. Furthermore, as discussed above, the undersigned concludes that the Plaintiff's underlying claims are without merit. Thus, this motion should be denied.

## IV. CONCLUSION

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendant Southern Health Partners' Motion for Summary Judgment (Dkt. # 17) and the Defendants DeLoach and Warchol's Motion for Summary Judgment (Dkt. # 31) be GRANTED; the Plaintiff's Motions for Summary Judgement (Dkt. # 43) and Injunctive Relief (Dkt. # 44) be DENIED; and the Complaint be dismissed with prejudice.

IT IS SO RECOMMENDED.

*Bruce H. Hendricks*
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

September 29, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).